IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **BRENT MICHAEL COKER,** **INDIVIDUALLY and as the** **ADMINISTRATOR of the ESTATE of** **GLENN LAMAR COKER,** | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | )   CIVIL ACTION NO. 5:23-cv-511 (MTT) |
| **API OUTDOORS, et al.,** | ) ) |
| Defendants. | ) ) |

## ORDER

Glenn Lamar Coker sustained fatal injuries when the cable assembly of a treestand he was using failed due to corrosion. Plaintiff, Mr. Coker's son and the administrator of his estate, brings this product liability action against Defendants Good Sportsman Marketing, LLC, Global Manufacturing, LLC, and API Outdoors. Defendants move for summary judgment (ECF 50) and to exclude, or in the alternative, to limit the Plaintiff's expert, William Carden (ECF 52). For the following reasons, Defendants' motion for summary judgment (ECF 50) is **GRANTED in part** and **DENIED in part**, and Defendants' *Daubert* motion (ECF 52) is **DENIED** without prejudice.

## I.  BACKGROUND[1]

On October 29, 2022, Mr. Coker went hunting using a 2015 API Outdoors Marksman climbing treestand, model CGL 300-A ("2015 API Treestand"). ECF 59-1 ¶¶ 1, 7; ECF 59-2 ¶ 1. Despite warnings, Mr. Coker failed to use the treestand's safety harness. ECF 59-2 ¶¶ 29, 51. A corroded cable securing the treestand parted, and Mr. Coker fell to his death. *Id.* ¶¶ 9, 42; ECF 59-1 ¶ 26.

The 2015 API Treestand has two sections, a seat section and a foot section. ECF 59-2 ¶ 5. Both sections are secured to the tree by a steel cable assembly that is extended around the tree. *Id.* ¶ 6. The cable assembly consists of several components. The cable itself is "7x7," which means it has seven strands of seven individual wires bonded together into a single cable. *Id.* ¶ 11. The design specifications call for the 7x7 cable to have a diameter of 2.8 millimeters. *Id.* The cable is then looped through a series of links restrained by aluminum crimped end plates. *Id.* An outer sheath covers the assembly. *Id.* ¶ 43; ECF 59-1 ¶ 41. Design specifications call for the outer sheath material to be made of polyvinyl chloride ("PVC"), but the subject cable sheathing here was instead made of ethylene vinyl acetate ("EVA"). ECF 59-1 ¶ 85; ECF 59-2 ¶ 17. The outer sheath covers the cable assembly's internal components, so users cannot inspect the entire wire cable assembly for corrosion. ECF 59-1 ¶¶ 41, 42; ECF 59-3 at 120:2–20.

Over time, treestand cables corrode and become unsafe for continued use. ECF 50-2 at 9–10; ECF 50-8 at 26:8–18; ECF 59-2 ¶ 28. For this reason, Defendants include a warning with their product instructing users to replace the cables every three years.

---

[1] Unless otherwise stated, the following facts are undisputed and are viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

ECF 59-2 ¶ 28. The 2015 API Treestand was manufactured in 2015, eight years before it failed. ECF 59-1 ¶ 56; ECF 59-2 ¶ 32. However, the purchase date is unknown. ECF 59-1 ¶ 28. Nor is it known when Mr. Coker first used the treestand or whether he replaced the cables.[2] ECF 59-1 ¶¶ 29, 43. In short, the parties dispute how long the subject cables had been in use when they failed due to corrosion.

## II.  STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party." *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The burden rests with the moving party to prove that no genuine issue of material fact exists. *Info. Sys. & Networks Corp.*, 281 F.3d at 1224. The party may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "When the *nonmoving* party

---

[2] Defendants argue it is undisputed that Mr. Coker never replaced the cables, pointing to their expert's testimony that the level of corrosion and rust was consistent with eight-year-old cables that had not been replaced. *See* ECF 59 at 2–4; ECF 59-2 ¶¶ 28, 54. Plaintiff's expert submits that various product defects accelerated the rate of corrosion, however, and Defendants also acknowledge there is some testimony that Mr. Coker would have tried to comply with instructions to replace the cables, assuming he received such instructions. ECF 59-2 ¶ 28; ECF 56-5. All that's to say, the parties have pointed to little in the record concerning how long the cables were in use and whether Mr. Coker replaced them. It is the jury's role, not the Court's, to weigh what little competing evidence there is.

has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437 (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)). The moving party "simply may show . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 1438 (citation modified). "Alternatively, the movant may provide affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.*

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249–50). Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### III. DISCUSSION

### A. Summary Judgment

*1. Product liability*

Defendants argue they are entitled to summary judgment because Plaintiff cannot show a defect that existed when the treestand was sold proximately caused Mr. Coker's injuries. *See* ECF 50-2 at 5–18. Plaintiff responds that he has presented evidence creating triable issues of manufacturing and/or design defect and proximate cause. ECF 56 at 3–17.

Relying on the expert opinion of William Carden, Plaintiff submits that the following design and manufacturing defects resulted in an accelerated rate of corrosion:

1) The treestand cable's inner wires were manufactured with a diameter below 2.8mm, deviating from design specifications.

2) The treestand cable's outer sheathing used EVA material rather than PVC, deviating from design specifications.

3) Defendants' choice to use 7X7 cables with a smaller diameter rather than a single cable or chain with a large cross-section made the cables more susceptible to corrosion.

ECF 56 at 3–7.[3]

In short, Plaintiff argues that the treestand had defects that, for various reasons, accelerated corrosion, causing premature cable failure. But it is undisputed that treestand cables corrode over time. Consequently, corroded cables are not, per se, defective cables. Rather, the question is whether the rate of corrosion was so accelerated, because of manufacturing or design defects, that the treestand failed

---

[3] Plaintiff also argues the decision to cover the cables with an outer sheath made adequate inspection impossible. ECF 56 at 7. Defendants argue Mr. Coker could have adequately inspected the treestand without assessing the areas covered by the outer sheath. *See* ECF 50-2 at 10. Whether the outer sheath cover prevented adequate cable inspection is also a question for the jury.

prematurely. The record does not provide an undisputed answer to that question because the parties dispute how long the tree stand cables were in service before they failed. If the cables were in service for eight hunting seasons, they were beyond their service life, and the treestand was not defective. On the other hand, if the cables were in service for only three years, within their expected service life, yet failed prematurely because corrosion accelerated, the treestand was defective. At this point, the service age of the subject cables is a question for the jury. Consequently, the Court cannot say on this record that the treestand was not defective in design or manufacture as a matter of law.[4]

Defendants also argue that any defect did not proximately cause Mr. Coker's injuries because Mr. Coker failed to 1) properly store the product, 2) visually inspect the product before use, 3) replace the cables after three years as directed by the manufacturer, and 4) use a safety harness to remain connected to the tree. ECF 50-2 at 13–17. The first three failures are disputed. ECF 59-2 ¶¶ 28, 65. Plaintiff does not dispute that Mr. Coker failed to use a safety harness. ECF 59-2 ¶ 51. But as Defendants conceded at oral argument on their motion, the Court cannot find as a matter of law that Mr. Coker's failure to wear a safety harness bars Plaintiff's claim. *See Crews v. Tahsin Industrial Corp. USA*, 2022 WL 1567707 at *4 (11th Cir. 2022) ((("[P]roximate cause is generally left to a jury unless it is plain and undisputed.") (citing *S. Bell. Tel. & Tel. Co. v. Dolce*, 178 Ga. App. 174, 176, 342 S.E.2d 497, 498 (1986)); *Williams v. Grier*, 196 Ga. 327, 337, 26 S.E.2d 698, 704 (1943) ("[I]f the character of the intervening act

---

[4] That said, Defendants move for summary judgment on Plaintiff's defective warnings claim, too. ECF 50-2 at 12–13. Plaintiff does not oppose Defendants' motion with respect to his warnings claim. ECF 56 at 1. Thus, summary judgment is **GRANTED** as to Plaintiff's defective warnings claim.

claimed to break the connection between the original wrongful act and the subsequent injury was such as its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrongdoer, the causal connection is not broken."); *Blondell v. Courtney Station 300 LLC*, 362 Ga. App. 1, 7, 865 S.E.2d 589, 596 (2021)("[T]he touchstone for proximate cause is foreseeability."). Here, there is an issue of fact as to whether Mr. Coker's failure to wear a harness was foreseeable. *See* ECF 59-1 ¶ 74.

  2. Punitive damages

Punitive damages are available in "tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b). "Negligence, even gross negligence, is inadequate to support a punitive damage award." *Colonial Pipeline Co. v. Brown*, 258 Ga. 115, 118, 365 S.E.2d 827, 830 (1988). In general, punitive damages are "improper where a defendant has adhered" to the relevant safety regulations and industry standards. *Stone Man, Inc. v. Green,* 263 Ga. 470, 471–72, 435 S.E.2d 205, 206 (1993); *see also Bryant v. BGHA, Inc.,* 9 F. Supp. 3d 1374, 1396 (M.D. Ga. 2014) ("As a general rule, punitive damages are not appropriate in cases where a manufacturer complies with regulatory standards" (citation modified)). Even so, if other evidence, such as prior similar instances, shows that the defendant had notice of a defect but disregarded it, that may raise a triable issue of conscious indifference. *See e.g., Griffin v. Toyota Motor Corp.*, 2025 WL 1709936, at *8 (N.D. Ga. June 18, 2025).

Here, the parties agree that the 2015 API Treestand model complied with industry standards. ECF 59-2 ¶ 19. And although Plaintiff asserts twelve other incidents put Defendants on notice of the 2015 API Treestand's defects, Plaintiff has not meaningfully argued similarity by pointing to any particular instance or defect that would have put Defendants on notice. ECF 56 at 17–18. Nor has Plaintiff directed the Court to any specific facts that would demonstrate similarity in Plaintiff's Statement of Undisputed Facts.[5] Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on this issue.

## B. *Daubert* Motion

The parties' *Daubert* briefs address Mr. Carden's opinions only in the abstract. *See* ECF 52, 57, 60. They do not address the fit of those opinions with the relevant issue—whether an accelerated rate of corrosion caused *premature* cable failure. Accordingly, the Court **DENIES** Defendants' *Daubert* motion without prejudice.

## IV. CONCLUSION

Defendants' motion for summary judgment (ECF 50) is **GRANTED in part** and **DENIED in part**. Summary judgment is **GRANTED** as to Plaintiff's defective warnings and punitive damages claims but **DENIED** as to all other claims.

Defendants' *Daubert* motion (ECF 52) is **DENIED** without prejudice.

**SO ORDERED**, this 24th day of February, 2026.

S/ Marc T. Treadwell<br>
MARC T. TREADWELL, JUDGE<br>
UNITED STATES DISTRICT COURT

---

[5] Although Plaintiff states that some of the other incidents involved cable failure relating to the wire strand cable design, Plaintiff does not explain whether these incidents involved an accelerated rate of corrosion due to the *same* alleged product defects, resulting in *premature* cable failure, or whether they involved an inability to properly inspect the wire cables because of outer sheathing. *See* ECF 56-1 ¶¶ 59–75, 89.